## Pieri, Appellant, *v.* Harris et al.

Argued October 1, 1935.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis Waber,* for appellant.

*Philip L. Leidy,* of *Pepper, Bodine, Stokes & Schoch,* for appellee.

OPINION BY JAMES, J., December 11, 1935:

Plaintiff sued T. T. Harris and Quaker City Lines, Inc. for personal injuries sustained on January 27, 1931 in a collision between an automobile he was driving and a motor omnibus, and recovered a verdict against T. T. Harris. Subsequently, defendant's motion for judgment non obstante veredicto was granted and the sole question involved on this appeal is the correctness of this ruling.

Two of plaintiff's witnesses testified that there was painted upon the side of the motor bus "Quaker City Lines, Incorporated," and the third witness testified that in addition the words "T. T. Harris, Lessee" were

painted opposite the front door where one entered the bus.

T. T. Harris, when called as a witness on his own behalf, testified that he had been engaged as the owner and operator of busses since 1927 in his own right as the Quaker City Lines and was the owner of the bus involved in the collision. He produced a written agreement dated December 15, 1930, wherein as lessor he had leased for operation from month to month at a stipulated monthly rental, twelve White busses, model 50-B, and six White busses, model 54-A, to the Quaker City Motor Coach Lines, Incorporated, on whose behalf T. T. Harris signed the lease as its president and the lease remained in effect until January 18, 1932, when the lessee went into the hands of a receiver. Under the terms of the lease, the lessor agreed to insure against loss by fire or theft but was not to be liable to the lessee for his failure to do so. It further provided that no liability should be attached to the lessor by reason of the operation or maintenance of the busses. The lease was subject to cancellation by either party upon ten-days' written notice and the lessor had the right to declare the lease null and void upon the happening of other stipulations unnecessary to detail. The particular bus in question was not specifically mentioned in the lease but according to Harris' testimony, the lease included all the busses that Harris owned. All of the busses were kept by the defendant at Clementon, N. J. On cross-examination Harris stated that the insurance policy required by the Board of Public Utilities of the State of New Jersey to be deposited, was probably in both names. The driver of the bus testified that he had been employed by the Quaker City Motor Coach Lines, Incorporated, since 1929.

The affidavit of defense filed by the Quaker City Lines, Inc., acknowledged on April 4, 1933, denied that it was the owner or operator of the auto bus while the affidavit

of defense filed by T. T. Harris, acknowledged April 4, 1933, admitted that it was the owner of the auto bus but averred that the bus was being operated by one duly licensed for the purposes only of the employer of such operator, but did not aver who the employer was, the knowledge of which was within the breast of T. T. Harris, both as president of the Quaker City Motor Coach Lines, Incorporated, and in his individual capacity.

The court below was of the opinion that as the testimony of T. T. Harris was uncontradicted and the validity and the good faith of the lease were in no way called in question, the case was controlled by Paragraph C of the rule as laid down in Hartig v. American Ice Co. et al., 290 Pa. 21, 31, 137 A. 867, which is as follows: "Where the evidence produced by plaintiff, if believed, is sufficient to prove that he was injured by the negligence of one in charge of a business automobile, bearing the trade name of defendant, displayed thereon in such a manner as trade or business names are usually placed on vehicles used for trade or business purposes, these facts are sufficient (1) to raise the presumption that the car in question was owned by defendant and was being used by the person in charge thereof for defendant's business purposes; and (2), when such presumptions so arise, they entitle plaintiff to have his case submitted to the jury (a) unless ...... (c) where, in addition to the uncontradicted oral evidence on the side of defendant, showing no liability, there is admittedly genuine or unattacked documentary evidence which relieves defendant from the possibility of liability."

Plaintiff did not admit that the lease was genuine but on the contrary attacked its validity. Under the unusual circumstances, which this record presents, we think there was sufficient testimony from which the jury could have determined that the lease was not genuine and merely a guise to relieve the real owner from lia-

bility. Solely because plaintiff was not able to dispute the execution of the lease, did not establish that it was genuine. Whether the lease had actually been executed on December 15, 1930, and was in effect on the date of the accident and whether it established such a relationship as relieved the present defendant from liability from the operation of the bus was to be determined by the jury in the light of all the testimony. From the entire record we are convinced that the court erred in holding as a matter of law that the lease was admittedly genuine or unattacked.

Judgment reversed and herein entered for plaintiff on the verdict.